**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **LINDA BADNELL,** | : | |
| 2334 Marion Ave. | : | Case No.: 2:19-cv-5389 |
| Zanesville, OH 43701 | : | |
| | : | JUDGE |
| Plaintiff, | : | |
| | : | MAGISTRATE JUDGE |
| v. | : | |
| | : | |
| **CONTINUING HEALTHCARE** | : | |
| **SOLUTIONS, INC.** | : | **Jury Demand Endorsed Hereon** |
| c/o Registered Agent: | : | |
| Benjamin J. Parsons | : | |
| 5990 Venture Dr., Suite A | : | |
| Dublin, OH 43017 | : | |
| | : | |
| and | : | |
| | : | |
| **CHS EMPLOYMENT** | : | |
| **SERVICES, LLC** | : | |
| c/o Registered Agent: | : | |
| Benjamin J. Parsons | : | |
| 5990 Venture Dr., Suite A | : | |
| Dublin, OH 43017 | : | |
| | : | |
| Defendants. | : | |

**COMPLAINT**

NOW COMES Plaintiff Linda Badnell ("Plaintiff") and proffers this Complaint for damages against Defendant Continuing Healthcare Solutions, Inc. and Defendant CHS Employment Services, LLC (collectively "Defendants").

**JURISDICTION AND VENUE**

1. This action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*., the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), R.C. Chapter

4111 *et seq.*, the Ohio Prompt Pay Act, and the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2610 *et seq.*

2. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 and 29 U.S.C. § 1332(e), which provide for original jurisdiction of Plaintiff's claims arising under the laws of the United States and over actions to secure equitable and other relief.

3. This Court also has jurisdiction over Plaintiff's claims under the statutory laws of Ohio pursuant to supplemental jurisdiction as codified at 28 U.S.C. § 1367.

4. Venue is proper in this forum pursuant to 28 U.S.C. §1391, because Plaintiff entered into an employment relationship with Defendants in the Southern District of Ohio and performed her job duties there, and Defendants are doing and have done substantial business in the Southern District of Ohio.

## THE PARTIES

5. Plaintiff Linda Badnell is an individual, a United States citizen, and a resident of Muskingum County, Ohio.

6. At all times relevant herein, Plaintiff was an "employee" of Defendants as that term is defined by the FLSA, R.C. Chapter 4111, and the FMLA.

7. Defendant Continuing Healthcare Solutions, Inc. is a corporation registered to do business in Ohio.

8. Defendant CHS Employment Services, LLC is a limited liability company registered to do business in Ohio.

9. Defendants operate several nursing and retirement facilities in multiple states, including a nursing and retirement facility known as Cedar Hill Care Center ("Cedar Hill"), located at 1136 Adair Ave., Zanesville, OH 43701 in Muskingum County.

10. At all times relevant herein, Defendants were "employers" as that term is defined by the FLSA, R.C., Chapter 4111, and the FMLA.

11. At all times relevant herein, Defendants have been engaged in interstate commerce or in the production of goods for commerce, and/or the business activities of Defendants constituted an enterprise engaged in interstate commerce within the meaning of the FLSA, and/or Defendants have an annual dollar volume of sales or business of at least $500,000.

12. Upon information and belief, at all times relevant herein, Defendants were fully aware of the fact that they were legally required to comply with the wage and hour laws of the United States and of the State of Ohio.

## FACTUAL BACKGROUND

**Plaintiff's Job Duties and Pay Structure**

13. Plaintiff was employed by Defendants between approximately September 13, 2017 and October 14, 2019.

14. Plaintiff began her employment at Defendants' Muskingum Skilled facility and Riverside Landing facility. She was later transferred to Defendants' Cedar Hill facility in or around May of 2019. The Cedar Hill facility was also connected to the Sterling Suites facility.

15. Throughout her employment, Plaintiff worked in the position of Business Office Manager.

16. In this position, Plaintiff's job duties consisted of collecting, depositing, and distributing patient funds, as well as addressing collections issues and preparing claims for patient Medicare and Medicaid accounts. Plaintiff utilized standardized forms and policies to complete these tasks.

17. Plaintiff's job duties did not include the exercise of discretion and independent judgment on matters of significance.

18. Plaintiff did not manage or supervise any employees.

19. At the time she was hired, Plaintiff was informed she would be paid a salary based on 40 hours, and she was classified as an exempt employee.

20. From the inception of her employment until in or around early May 2018, Defendants misclassified Plaintiff as an exempt employee.

21. During this time period, Plaintiff consistently worked more than 40 hours in a workweek.

22. After early May 2018, Defendants changed Plaintiff's classification to an hourly, non-exempt employee. However, Plaintiff's job duties did not change.

23. Despite Defendants' realization that they had misclassified Plaintiff, Defendants did not offer Plaintiff back pay or overtime pay for her past work.

24. Accordingly, prior to early May 2018, Defendants failed to pay Plaintiff one and one-half times her regular rate of pay for all hours worked per workweek in excess of 40.

25. Prior to early May 2018, on weeks Plaintiff worked more than 40 hours per workweek, she was not permitted to report her hours worked as such and was not compensated for those hours.

26. Plaintiff manually filled out timesheets for each shift she worked.

27. On days Plaintiff worked more than eight (8) hours, she was instructed to write "8" for her total hours worked, regardless of her actual time worked. If Plaintiff wrote more than 8 hours, she was told that her timesheet would be rejected and returned to her for correction.

4

28. Plaintiff regularly worked 9-10 hours per day, or more, on days she reported working eight hours. Defendants were aware that Plaintiff was working more than 40 hours in a workweek.

29. Throughout her employment, Plaintiff was not exempt from the overtime mandates of the FLSA and OMFWSA.

30. Defendants failed to compensate Plaintiff in accordance with the FLSA and OMFWSA prior to early May 2018.

**Plaintiff's FMLA Leave**

31. On or about March 9, 2019, Plaintiff notified her administrator at Muskingum Skilled of her need and intention to take FMLA leave for her husband's serious medical condition. Plaintiff needed continuous leave to care for her husband and then would need intermittent leave to care for her husband thereafter.

32. Plaintiff submitted FMLA paperwork to Defendants' HR Representative, Megan Rohr.

33. Plaintiff never received any paperwork approving or denying her FMLA leave request, or any follow-up paperwork from Defendants related to her certification at all. However, Ms. Rohr told Plaintiff that her request had been sent to "corporate HR."

34. Plaintiff was absent from work for a continuous period of time in March 2019 to care for her husband.

35. Plaintiff was not disciplined for missing work during this time, and Ms. Rohr informed Plaintiff that her absences to care for her husband were covered under the FMLA.

36. Ms. Rohr also told Plaintiff she was covered for one year of intermittent FMLA leave to care for her husband and/or take him to doctor's appointments, as needed.

5

37. In or around May of 2019, Plaintiff was transferred to Defendants' Cedar Hill facility.

38. On or about September 19, 2019, Plaintiff's husband experienced a flare-up related to the symptoms of his medical condition.

39. On or about September 19, 2019 Plaintiff notified her supervisor, Denise Shample, the Administrator at Defendants' Cedar Hill facility, that she would be using her approved intermittent FMLA leave that day to care for her husband and would not be at work that day.

40. After Plaintiff returned to work, Plaintiff's supervisor told her that Defendants did not have FMLA paperwork for her related to her husband.

41. Plaintiff contacted Ms. Rohr and requested that Ms. Rohr send Plaintiff's FMLA paperwork to Defendants' Cedar Hill facility. Ms. Rohr requested the paperwork from corporate and sent it to Plaintiff.

42. Upon receipt of the paperwork from Ms. Rohr, Plaintiff provided the paperwork to the HR Manager at Cedar Hill, Shelby Moody.

43. On or about September 25, 2019, Plaintiff met with Ms. Shample and Ms. Moody and wrote Plaintiff up for attendance, in part due to her absence on September 19, 2019. Ms. Shample informed Plaintiff that she would need to provide the original FMLA paperwork, not a copy or photograph, and the write-up would be void if she did that.

44. On or about the next day, Plaintiff provided the original FMLA paperwork to Ms. Moody.

45. This time, Ms. Moody verbally informed Plaintiff that her certification would not be accepted because it was missing the first page. Plaintiff requested a blank first page from Ms.

Moody then showed Ms. Moody that the blank first page matched the first page she provided. Ms. Moody did not provide any response to this.

46. Plaintiff opposed this denial and asked Ms. Shample why it was accepted the first time but would not be accepted this time.

47. The following week, in or around late September 2019, Plaintiff sent a follow-up email to her supervisor inquiring as to the reason her FMLA paperwork was rejected. Plaintiff provided copies of the blank first page and the filled out first page and said they were the same. Plaintiff requested further explanation on why the paperwork was being denied and why her FMLA leave was being denied. Plaintiff received no response.

48. In early October, Plaintiff sent another email to her supervisor, again inquiring as to why her FMLA paperwork was not acceptable. Plaintiff again received no response.

49. After Plaintiff's FMLA request and FMLA inquiries, her supervisor's behavior toward Plaintiff changed. Plaintiff became a target.

50. Throughout her employment with Defendants, Plaintiff never received any paperwork either approving or denying her FMLA request.

51. On or about October 9, 2019, after Plaintiff's multiple inquiries into her FMLA denial, Plaintiff was told she was receiving another write-up for a billing issue that had arisen in or around August 2019.

52. Plaintiff had previously discussed this issue with her supervisor on or about September 20, 2019. During this meeting, Plaintiff was told not to worry about the issue, since it did not warrant a write-up.

53. On or about October 10, 2019, Plaintiff was informed that her office was being moved. At the time, Plaintiff was sharing an office with the Social Service Director.

7

54. Plaintiff packed and moved her belongings and paperwork into her new office on October 10, 2019.

55. Plaintiff began working in her new office on or about October 11, 2019.

56. On or about October 14, 2019, Plaintiff was approached by Ms. Shample and asked to meet with Ms. Shample, Ms. Moody, and an Administrator In Training.

57. In the meeting, Ms. Shample told Plaintiff that she was being terminated due to a breach of confidentiality. Plaintiff was shocked and asked "how?" Ms. Shample said while she was moving offices, she had thrown away a piece of paper in her office trash can with a resident's name and balance on it, and this was a breach of confidentiality. Plaintiff was told that "three witnesses" saw the paper in the trash.

58. In Plaintiff's role as a Business Office Manager, her patient billing documents did not contain resident medical information or other confidential information that would be subject to HIPAA or other privacy laws.

59. While Plaintiff was on duty, one of Defendants' nurses left medical records and medication out in the open while the nurse left the floor. Plaintiff put this information in her weekend report and informed Ms. Shample and others of this incident at a morning meeting. This nurse was not terminated for this incident.

60. Defendants terminated Plaintiff in retaliation for asserting her rights under the Family Medical Leave Act and opposing the violation of her rights under the FMLA.

## COUNT I
### FLSA 29 U.S.C. § 201, *et seq.* – Failure to Pay Overtime

61. All of the preceding paragraphs are realleged as if fully rewritten herein.

62. Plaintiff was an employee of Defendants within the previous three years of the filing of this Complaint.

63. Plaintiff was not exempt from the overtime provisions of the FLSA.

64. Defendants misclassified Plaintiff as a salary exempt employee and failed to pay Plaintiff an overtime premium for all hours worked in excess of 40 per workweek.

65. Defendants were aware that Plaintiff worked more than 40 hours per workweek but did not receive overtime compensation at a rate of one and one-half times her regular rate of pay for hours worked in excess of 40 per workweek.

66. Defendants knew or should have known of the overtime payment requirement of the FLSA and that Plaintiff was a non-exempt employee entitled to overtime compensation for all hours worked in excess of 40 per workweek.

67. Defendants' refusal to properly compensate Plaintiff as required by the FLSA was willful.

68. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages.

## COUNT II
### R.C. 4111.03 – Failure to Pay Overtime

69. All of the preceding paragraphs are realleged as if fully rewritten herein.

70. Defendants violated the Ohio Minimum Fair Wage Standards Act, Ohio Revised Code, Section 4111.03, by misclassifying Plaintiff as a salary exempt employee and failing to compensate Plaintiff at a rate of one and one-half times her regular rate of pay for all hours worked in excess of 40 in each workweek.

71. Defendants' knowing failure to pay Plaintiff overtime wages for hours worked in excess of 40 per workweek is a violation of Section 4111.03 of the Ohio Revised Code.

72. For Defendants' violations of R.C. 4111.03, Plaintiff is entitled to recover unpaid wages, an additional two times the amount of the unpaid wages, attorneys' fees and costs, and all other remedies available under Ohio law.

## COUNT III
### R.C. 4113.15 – Failure to Tender Pay by Regular Payday

73. All of the preceding paragraphs are realleged as if fully rewritten herein.

74. Plaintiff asserts this claim under R.C. 4113.15, which requires Defendants to compensate its employees within thirty (30) days of the performance of compensable work.

75. Defendants failed to make proper wage payments to Plaintiff for all hours worked.

76. By failing to make the wage payments within 30 days of when such payments were due, Defendants have violated R.C. 4113.15.

77. As a result, in addition to the amount owed to Plaintiff, Defendants are liable to Plaintiff for an amount equal to six percent of Plaintiff's claim still unpaid or two hundred dollars per paid period, whichever is greater.

## COUNT IV
### FMLA – Interference

78. All of the preceding paragraphs are realleged as if fully rewritten herein.

79. Plaintiff is an "eligible employee" as defined by 29 U.S.C. § 2611(2).

80. Defendants are "employers" as defined by 29 U.S.C. § 2611(4)(A).

81. Plaintiff exercised her rights under the FMLA, as she gave notice to Defendants that she intended to take FMLA leave, provided medical certification, and took FMLA leave.

82. Defendants interfered with Plaintiff's FMLA rights by failing to notify Plaintiff that her medical leave was FMLA-qualifying; denying her coverage for leave that was covered by the

Act; terminating her employment; and/or otherwise discriminating against her in the terms, privileges, and conditions of her employment.

83. Defendants lacked good faith and/or reasonable grounds to believe it had not violated the FMLA in its discipline and discharge of Plaintiff.

84. Defendants interfered with Plaintiff's FMLA rights by failing to responsively answer Plaintiff's questions concerning her rights and responsibilities under the FMLA. See 29 CFR 825.300(c)(5)

85. Defendants interfered with Plaintiff's FMLA rights by failing to provide a designation notice in writing. See 29 CFR 825.300(d)(4)

86. Defendants interfered with Plaintiff's FMLA rights by failing to inquire further of Plaintiff to ascertain whether her leave was potentially FMLA-qualifying. See 29 CFR 825.301(a)

87. Defendants interfered with Plaintiff's FMLA rights by failing to have discussions with Plaintiff regarding a dispute as to whether her leave qualified for FMLA leave. See 29 CFR 825.301(c)

88. Defendants interfered with Plaintiff's FMLA rights by failing to advise Plaintiff that her certification was incomplete or insufficient and failing to state in writing what additional information was necessary to make the certification complete and sufficient. See 29 CFR 825.305(c)

89. Defendants interfered with Plaintiff's FMLA rights by failing to advise Plaintiff of the anticipated consequences of Plaintiff's failure to provide adequate certification. See 29 CFR 825.305(d)

90. Defendants interfered with Plaintiff's FMLA rights by failing to otherwise follow the notice and certification requirements set forth in the FMLA and accompanying regulations.

91. Defendants' violations of the Family and Medical Leave Act entitle Plaintiff, pursuant to 29 U.S.C. § 2617(a), to monetary damages including back pay and benefits, front pay, statutory liquidated damages, and attorneys' fees and costs of bringing this action, in an amount to be determined at trial.

## COUNT V
## FMLA – Retaliation

92. All of the preceding paragraphs are realleged as if fully rewritten herein.

93. Plaintiff is an "eligible employee" as defined by 29 U.S.C. § 2611(2).

94. Defendants are "employers" as defined by 29 U.S.C. § 2611(4)(A).

95. Plaintiff informed Defendants of her need for and intention to take FMLA-qualifying medical leave related to her husband's serious medical condition.

96. Plaintiff was told by an employee of Defendants that her request for continuous FMLA leave in or around March 2019 had been approved. She was also told she was approved for one year of intermittent FMLA leave related to her husband's serious medical condition.

97. Plaintiff suffered an adverse employment action when Defendants wrote her up and terminated her employment.

98. Defendants violated the FMLA and retaliated against Plaintiff by failing to inform her that she was eligible to take FMLA-qualifying leave, disciplining Plaintiff, terminating her employment after she took FMLA-qualifying leave, and/or otherwise discriminating against her in the terms, privileges, and conditions of her employment.

99. Defendants lacked good faith and/or reasonable grounds to believe that it had not violated the FMLA in its discharge of Plaintiff.

100. Defendants' violation of the Family and Medical Leave Act entitles Plaintiff, pursuant to 29 U.S.C. § 2617(a), to monetary damages including back pay and benefits, front pay,

statutory liquidated damages, and attorneys' fees and costs of bringing this action, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff is entitled to and prays for the following relief:

A. For all counts, monetary damages including back pay and benefits, front pay, statutory liquidated damages, expert witness fees and attorneys' fees and costs, in an amount to be determined at trial, but in any event not less than $75,000.00;

B. A declaratory judgment that Defendants' practices complained of herein are unlawful under the FLSA and the OMFWSA;

C. An injunction against Defendants preventing them from engaging in each of the unlawful practices, policies, and patters set forth herein;

D. An award of unpaid wages due under the FLSA, OMFWSA, and R.C. § 4113.15;

E. An award of liquidated damages and/or treble damages as a result of Defendants' failure to pay overtime compensation pursuant to 29 U.S.C. § 216 and R.C., Chapter 4111;

F. An award of an additional six percent of Plaintiff's unpaid wages, or two hundred dollars per pay period in which Defendants failed to properly compensate Plaintiff, whichever is greater, pursuant to R.C. 4113.15;

G. An award of prejudgment and post judgment interest;

H. An award of costs and expenses of this action together with reasonable attorneys' fees and expert fees;

I. Any and all other legal and equitable relief as this Court deems appropriate.

Respectfully submitted,

*/s/Greg Mansell*
Greg R. Mansell (0085197)
(*Greg@MansellLawLLC.com*)
Carrie J. Dyer (0090539)
(*Carrie@MansellLawLLC.com*)
Rhiannon M. Herbert (0098737)
(*Rhiannon@MansellLawLLC.com*)
**Mansell Law, LLC**
1457 S. High St.
Columbus, Ohio 43207
Ph: (614) 610-4134
Fax: (614) 547-3614
*Counsel for Plaintiff*

## JURY DEMAND

Plaintiff hereby requests a jury of at least eight (8) persons.

*/s/Greg R. Mansell*
Greg R. Mansell (0085197)